**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| VICTORIA SPAUGY, | : | |
| Plaintiff, | : | |
| | | Case No. 3:12cv00081 |
| vs. | : | |
| | | District Judge Walter Herbert Rice |
| CAROLYN W. COLVIN, | : | Chief Magistrate Judge Sharon L. Ovington |
| Commissioner of the Social | | |
| Security Administration, | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATIONS[1]**

## I.  Introduction

Plaintiff Victoria Spaugy returns to this Court for the second time raising concerns about the Social Security Administration's denial of her January 2005 applications for Disability Insurance Benefits and Supplemental Security Income. Invoking Sentence Four of 42 U.S.C. §405(g), this Court previously remanded the matter – with specific instructions – for further consideration of Plaintiff's DIB and SSI applications.

On remand, Administrative Law Judge Thomas R. McNichols II concluded that Plaintiff is not under a "disability" as defined by the Social Security Act. This led him to also conclude that Plaintiff was not eligible to receive DIB or SSI. (Tr. at 855-66).

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #12), Plaintiff's Reply (Doc. #12), the administrative record, and the record as a whole.

Plaintiff seeks an Order reversing ALJ McNichols' (second) decision or, at a minimum, remanding the case to the ALJ to correct certain alleged errors. The Commissioner seeks an Order affirming the ALJ's decision.

This Court has jurisdiction to review the administrative denial of Plaintiff's DIB and SSI applications. *See* 42 U.S.C. §§405(g), 1383(c)(3).

## II. "Disability" Defined

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). A "disability" consists only of physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70.

A DIB/SSI applicant bears the ultimate burden of establishing that he or she is under a disability. *See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997); *see Wyatt v. Secretary of Health and Human Services*, 974 F.2d 680, 683 (6th Cir. 1992); *see also Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

### III. Plaintiff's Background And ALJ McNichols' First Nondisability Decisions

The Court's previous description of the medical opinions and other medical evidence is incorporated herein by reference. (Tr. at 872-76). Among the more salient points Plaintiff presents is her assertion that she was under a disability, beginning on June 26, 2004, due to the following health problems: chronic obstructive pulmonary disease (COPD) and high blood pressure along with "Bipolar [sic], mood disorder, [and] migraines ...." (Tr. at 408; *see* Tr. at 395-401, 793-95). Plaintiff's COPD is emphysema. (Tr. at 857).

Plaintiff was considered a "younger" person under Social Security Regulations when she filed her DIB and SSI applications and when ALJ McNichols issued his first non-disability decision. 20 C.F.R. §§404.1563(c); 416.963(c).[2] She has a "limited" education as defined by the Regulations. *Id.*, §404.1564(b)(3). In the past she worked as a bartender, short-order clerk, deli clerk, hand packer/crater, machine operator, and as a maintenance helper.

ALJ McNichols concluded in his first nondisability decision that Plaintiff could perform light work[3] with the following limitations:

> [S]he must be permitted to alternate periods of sitting and standing at 30-minute intervals and cannot crouch, crawl, or climb ladders, ropes, or scaffolds. She is restricted to only occasional pushing or pulling and limited to

---

[2] The remaining citations will identify the pertinent DIB regulations with full knowledge of the corresponding SSI regulations.

[3] Under the Regulations, "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds...." 20 C.F.R. §404.1567(b).

>working in clean-air, temperature-controlled environments with no exposure to irritants. The claimant is also restricted to performing low-stress jobs which do not involve production quotas, direct interpersonal contact with members of the general public, or occupational exposure to drugs or alcohol.

(Tr. 28). The ALJ relied on the opinions of two record reviewers for the Ohio Bureau of Disability Determinations (BDD), especially in support of his conclusion that Plaintiff was limited to light work "in temperature-controlled environments with no exposure to irritants." *Id*. The ALJ also rejected the opinions provided by Plaintiff's treating physician Karen Frank, M.D. *Id.* at 29-30.

After learning that the Social Security Administration denied her DIB and SSI applications, Plaintiff turned to this Court seeking judicial review of ALJ McNichols' first decision. *Victoria Spaugy v. Michael J. Astrue, Comm'r of Social Sec*., 3:10cv00106 (S.D. Ohio). United States District Judge Walter Herbert Rice vacated ALJ McNichols' decision due, in part, to the ALJ's inadequate consideration of Dr. Frank's opinions. Judge Rice explained:

>1.   The Administrative Law Judge failed to provide sufficient reasoning, pursuant to the Commissioner's Regulations and prevailing case law, for rejecting the opinion of Plaintiff's treating physician, Dr. Karen Frank, M.D., as to the [Plaintiff's] limitations and restrictions. For example, although ultimately limiting the Plaintiff to a "clean air, temperature controlled environment," Tr. 846, a limitation far broader than his initial limitation in the hypothetical question to the Vocational Expert in which his description of "no exposure or irritants" was qualified as meaning concentrated amounts of same, the hearing officer nonetheless ignored certain limitations which Dr. Frank described to wit: Plaintiff' 's inability to be 'around perfumes, cologne, aftershave lotion, etc." The Administrative Law Judge either ignored or neglected to explain why he was not giving credence to those additional limitations found by Dr. Frank, which may well have reduced the number of available jobs to zero....

> 2. In addition, in this Court's opinion, the Commissioner failed to give deference to the opinion of Dr. Frank, even if unable to give said medical provider's opinion controlling weight.

(Tr. at 885-86). Judge Rice remanded the case explicitly instructing the Social Security Administration:

> [T]o determine Plaintiff's eligibility for benefits, to wit: at the very least, the Administrative Law Judge must give full and adequate reasons, pursuant to the Commissioner's Regulations and prevailing case law, for giving or failing to give, based upon the entirety of the record, the opinion of Dr. Karen Frank controlling or, at the very least, deferential weight in the determination of whether Plaintiff is entitled to benefits under the Social Security Act.

(Tr. at 887).

## IV. **Proceedings On Remand**

### A. **Medical Evidence**

Medical evidence added to the administrative record on remand included hospital records, test results, and medical source opinions.

Plaintiff was hospitalized for ten days in late June to early July 2008. (Tr. 933-955). Her discharge diagnoses included renal failure, aspiration pneumonia with possible sepsis, polypharmacy, COPD, bi-polar disorder, depression, osteoporosis, hypertension, chronic pain, and anemia. (Tr. 933).

A History and Physical Report, electronically signed by Dr. Frank in mid-July 2008, described Plaintiff's social history:

> She is single. She lives at home with her mother. She is disabled, unable to work due to the many different aspects of her condition, including the chronic obstructive pulmonary disease, she cannot work around particulates, but also the bipolar [disorder] makes it very difficult for her to work well with others at

5

times ....

(Tr. 935).

In September 2009, Plaintiff underwent a pulmonary function test. A physician interpreted the results as showing a "Mild Restriction." (Tr. 986). Her next pulmonary function test, in February 2011, showed "severe obstruction." (Tr. 985). Plaintiff underwent a pulmonary function test in August 2011. (Tr. 1219-1221). The results showed "moderately severe obstructive defect with significant bronchodilator response and lung volumes [and] hyperinflation with air trapping and increased airway resistance." (Tr. 1219).

Plaintiff underwent physical therapy from March 3, 2011, to June 2, 2011. (Tr. 1031-1045). The purpose of therapy was to address symptoms associated with lumbar spondylosis. Plaintiff reported problems bending, squatting, carrying objects, climbing stairs, kneeling, raising from a kneeling position, changing positions, sitting up straight, etc. (Tr. 1045). Clinical findings revealed decreased trunk range of motion, decreased flexibility, positive straight leg raising, etc. *Id*.

Dr. Wooten examined Plaintiff eight times between April 22, 2009 and November 9, 2011. Dr. Wooten also prescribed medications, ordered testing, and reviewed the testing. (Tr. 1141-51, 1223-27). In June 2009 and July 2011, Dr. Wooten completed basic-medical forms, opining that Plaintiff was limited to (1) lifting up to five pounds, (2) standing/walking up to two hours, and (3) sitting up to five hours. (Tr. 1046-1049). In support of these conclusions, Dr. Wooten referenced Plaintiff's shortness of breath when walking 50 yards or climbing a flight of stairs; her decreased range of lumbar-spine motion; and her increased

pain with prolonged sitting. (Tr. 1047, 1049). Dr. Wooten also marked boxes on the form indicating her opinion that Plaintiff was unemployable. *Id*.

From October 2009 through October 2011, Plaintiff was treated in a pain clinic. Treatment notes consistently document her reports of low-back pain. *E.g*., Tr. 1152-64, 1166-68, 1175-98. Her treatment consisted of pain medications, radio frequency, blocks, and injections.

Turning to Plaintiff's mental impairments, in November 2011 her treating psychiatrist, Dr. Joseph Trevino, completed a questionnaire. (Tr. 1213-16). Dr. Trevino diagnosed Major Depressive Disorder, Recurrent; PTSD; and Polysubstance Dependence in Remission. (Tr. 1213-16). He assigned Plaintiff a GAF[4] of 50, referring to serious impairments in social or occupational functioning. Dr. Trevino opined Plaintiff's impairments would cause her to be absent from work more than three times per month, on average. (Tr. 1215).

### B. Plaintiff's Testimony

During the hearing ALJ McNichols held on remand in December 2011, Plaintiff testified that she stopped working in 2002 due to breathing problems, including "real bad" shortness of breath. (Tr. 1239). She has not worked since then. (Tr. at 1239-40). For treatment, she uses inhalers and a nebulizer (four times a day). (Tr. 1240). She has difficulty

---

[4] Health care clinicians perform a GAF – Global Assessment of Functioning – to determine a person's psychological, social, and occupational functioning on a hypothetical continuum of mental illness. It is, in general, a snapshot of a person's "overall psychological functioning" at or near the time of the evaluation. *See Hash v. Commissioner of Social Sec*., 309 Fed.Appx. 981, 988 n.1 (6th Cir. 2009).

being around perfumes, lotions, colognes, etc., which cause her to cough "real bad." (Tr. 1241). When her COPD "acts up," her ankles swell. She quit smoking in 2003 except for one relapse in 2007. (Tr. 1243-44).

Plaintiff's family doctors – Drs. Frank and Wooten – have diagnosed her with fibromyalgia. (Tr. 1244-45). Her fibromyalgia mostly affects her hands and is helped by Lyrica. (Tr. 1249). She estimated her hand pain at 6 out of 10 (on a scale of zero to 10: zero equaling no pain; 10 equaling the worst pain imaginable). Hand pain causes her problems picking things up, brushing her teeth, and moving buttons and zippers. This pain usually arises once a week and lasts for half a day. Tr. 1260-61.

Plaintiff testified that she is able to walk 50 yards, stand for 30 minutes, sit for 30 minutes to one hour, and lift 5-10 pounds. She tries not to climb stairs due to shortness of breath. (Tr. 1251).

She has limited activities of daily living and limited socialization. Depression causes her to isolate herself from others. (Tr. 1246). She performs a few household chores and does very little shopping. She has panic attacks a couple times per month. When these occur, she feels like her heart is going to beat out of her chest. (Tr. 1257-88). She only leaves the house once or twice a month. (Tr. 1262).

Plaintiff has not used drugs or alcohol since 2004 except for a single relapse in 2007. (Tr. 1248).

## V.     Decision On Remand And Judicial Review

### A.     Second Nondisability Decision

On remand, ALJ McNichols utilized the sequential-evaluation procedure required by Social Security Regulations. *See* Tr. 855-66; *see also* 20 C.F.R. §404.1520(a)(4); *Walters v. Comm'r of Social Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). At step 4 of the sequential procedure, ALJ McNichols concluded – as he did in his first decision – that Plaintiff could perform a limited range of light work. Specifically, he found:

> [T]he claimant has the residual functional capacity to perform light work ... except alternating sitting and standing at 30-minute intervals; no climbing ropes/ladders/scaffolds or crouching or crawling; no more than occasional pushing/pulling; clean-air, temperature-controlled environment with no exposure to irritants; low stress work (no production quotas, direct interpersonal contact with members of the general public or occupational exposure to drugs or alcohol); with limited contact with coworkers and supervisors, including no teamwork.

(Tr. at 862). At this point in the decision, ALJ McNichols considered Dr. Frank's opinion about Plaintiff's "inability to 'be around perfumes, cologne, aftershave lotion, etc.'" (Tr. at 862). The ALJ rejected this limitation, concluding, "Though restricting the claimant to clean-air, temperature-controlled environment in the current residual functional capacity, the undersigned has not included Dr. Frank's restriction because the claimant has not proved that she has such specific allergies causing substantial symptoms...." (Tr. 862).

The ALJ also rejected Dr. Frank's opinion that Plaintiff could not perform even sedentary work. In doing so, the ALJ relied on his discussion of Dr. Frank's opinion in his first nondisability decision. The ALJ took this approach, rather than further evaluating Dr.

9

Frank's opinions, because – in the ALJ's words – "[t]he Court did not raise any issue with regard to rejection of these assessments other than with regard to restriction on exposure to perfumes/odors ...." (Tr. at 864).

### B. Judicial Review

Judicial review of an ALJ's decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Social Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Social Sec.*, 478 F3d 742, 745-46 (6th Cir. 2007).

The substantial-evidence review does not ask whether the Court agrees or disagrees with the ALJ's factual findings or whether the administrative record contains evidence contrary to those factual findings. *Rogers v. Comm'r of Social Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r of Social Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Social Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance..." *Rogers*, 486 F.3d at 241.

The second line of judicial inquiry – reviewing the ALJ's legal criteria for correctness – may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Social Sec*, 582 F.3d 647, 651 (6th Cir. 2009);

*see Bowen*, 478 F3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746 and citing *Wilson v. Comm'r of Social Sec*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

VI. **Discussion**

    A. **The Parties' Main Contentions**

    Plaintiff presents two main arguments:

> The ALJ failed to consider Dr. Frank's opinion as ordered by Judge Rice in the previous Order of remand..., when he merely addressed the issue concerning "clean air" workplace limitations and failed to address the issue of deference, due to mistakenly believing the "clean air" issue was the only issue to consider.
>
> The ALJ failed to properly consider treating source opinions of Dr[s.] Wooten and Trevino according to its own Regulations and Rulings when he glossed over the issue of deference.

(Doc. #8, PageID at 49) (capitalization omitted).

    The Commissioner contends:

> ALJ McNichols, in his previous decision, adequately explained the weight he was giving to Dr. Frank's exertional limitation conclusions.
>
> ALJ McNichols reasonably discounted Dr. Wooten's and Dr. Trevino's opinions.

(Tr. 82, 84).

    B. **Medical Source Opinions**

    Social Security regulations recognize several different categories of medical sources:

11

treating physicians and psychologists, nontreating yet examining physicians and psychologists, and nontreating yet record-reviewing physicians and psychologists. *See Gayheart v. Comm'r of Social Sec.*, 710 F.3d 365, 375 (6th Cir. 2013).

> As a general matter, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a "nonexamining source"), and an opinion from a medical source who regularly treats the claimant (a "treating source") is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a "nontreating source"). In other words, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker."

*Id.*, 710 F.3d at 375 (quoting, in part, Social Sec. Ruling No. 96–6p, 1996 WL 374180 at *2) (other citations omitted).

A treating source's opinion may be given controlling weight under the treating-physician rule only if it is both well supported by medically acceptable data and not inconsistent with other substantial evidence of record. *Id.* at 376 (citing 20 C.F.R. §404.1527(c)(2)). "If the Commissioner does not give a treating-source opinion controlling weight, then the opinion is weighed based on the length, frequency, nature, and extent of the treatment relationship, as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence." *Gayheart*, 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)(2)-(6)).

Unlike treating physicians, "opinions from nontreating and nonexamining are never assessed for 'controlling weight.' The Commissioner instead weighs these opinions based on the examining relationship (or lack thereof), specialization, consistency, and supportability,

12

but only if a treating-source opinion is not deemed controlling. Other facts 'which tend to support or contradict the opinion' may be considered in assessing any type of medical opinion." *Id*. (citing 20 C.F.R. §§404.1572(c), 404.1527(c)(6)).

Plaintiff reads Judge Rice's remand Order as directing the ALJ to address "two issues: Restrictions concerning clean air environment in the workplace and deference to Dr. Frank's opinion." (Doc. #8, PageID at 63). Plaintiff then acknowledges that ALJ McNichols addressed the "clean air" issue. In this manner, Plaitniff first focuses her challenge on the ALJ's failure to consider Dr. Franks' opinion. Plaintiff contends, "The ALJ was under the erroneous impression the case was only remanded to consider the clean air environment (Tr. 864); thereby, failing to consider whether the opinion of Dr. Frank is due deference, as directed by Judge Rice." *Id*. (internal citations omitted).

The Commissioner maintains:

[T]here is no reason to think that Judge Wright [sic] was concerned about ALJ McNichols's weighing of the exertional limitation aspects of Dr. Frank's opinion. After all, Judge Wright [sic] references only Dr. Frank's perfume/after shave limitations, and seemingly takes no issue with ALJ McNichols's exertional findings – based on the assessments of multiple state agency physicians – that Ms. Spaugy could perform a restricted range of light work (Tr. 28, 30, 885-86).

(Doc. #12, PageID at 83).

The Commissioner misreads the remand decision by overlooking Judge Rice's main point: the ALJ "failed to provide sufficient reasoning, pursuant to the Commissioner's Regulations and prevailing case law, for rejecting the opinion of Plaintiff's treating physician, Dr. Karen Frank, M.D." (Tr. at 885). Although Judge Rice addressed the ALJ's

13

omission of Plaintiff's inability to be "around perfumes, cologne, aftershave lotion, etc." (Tr. 885-86), this arose as single example of the overarching flaw – the ALJ's failure to sufficiently explain his reasoning concerning Dr. Frank's opinions – in the ALJ's first decision. This is seen in Judge Rice's use of the introductory phrase, "For example ...." (Tr. 885). In addition, Judge Rice pointed out the ALJ's failure to comply with the regulations by observing that the ALJ "failed to give deference to the opinion of Dr. Frank, even if unable to give said medical provider's opinion controlling weight." (Tr. at 886); *see Gayheart*, 710 F.3d at 376 (when the treating physician rule does not apply, ALJ must continue to weigh a treating physician's opinions under specific regulatory factors in §404.1527(d)(2-(6)). It is, moreover, easy to again spot Judge Rice's overriding concern in his specific remand instruction:

> [A]t the very least, the Administrative Law Judge must give full and adequate reasons, pursuant to the Commissioner's Regulations and prevailing case law, for giving or for failing to give, based upon the entirety of the record, the opinion of Dr. Karen Frank controlling or, at the very least, deferential weight in determining whether Plaintiff is entitled to benefits under the Social Security Act.

(Tr. 887). The issue thus becomes whether the ALJ's second decision contains full and adequate reasons, as the Regulations and case law require, for rejecting Dr. Frank's opinions. It does not.

Although the ALJ addressed Dr. Frank's reference to Plaintiff's "perfume/cologne" limitation, the ALJ's remaining review of Dr. Frank's opinions merely references the discussion in the ALJ's first nondisability decision. Because Judge Rice found that

14

discussion inadequate – and because Judge Rice vacated the Commissioner's first nondisability decision (Tr. at 887) – it was error for the ALJ to rely on his prior discussion of Dr. Franks without providing "full and adequate reasons ... for giving or for failing to give ... the opinion of Dr. Karen Frank controlling or, at the very least, deferential weight ...." (Tr. 887).

Furthermore, the ALJ's first nondisability decision credited the opinions of two state-agency physicians, Drs. Holbrook and Pangalangan, over the opinions of Plaintiff's treating physician, Dr. Frank. The ALJ's second decision did not address the opinions provided by Drs. Holbrook and Pangalangan. The Commissioner is thus presently left with the ALJ's prior acceptance of Dr. Holbrook's and Dr. Pangalangan's opinions to support the ALJ's second rejection of Dr. Frank's opinions. This is problematic because the ALJ's first nondisability decision provided no meaningful evaluation of the opinions provided by Drs. Holbrook and Pangalangan. The ALJ only considered one factor applicable under the Regulations by noting that their "conclusions are consistent with the updated medical records ...." (Tr. at 28); *see* 20 C.F.R. §404.1527(c) ("we consider all of the following factors in deciding the weight to give any medical opinion...."); *see also* 20 C.F.R. §404.1527(e) (factors apply to opinions of state agency consultants and medical experts); Social Security Ruling 96-6p, 1996 WL 374180 at *2 (same).

Even if it sufficed for the ALJ to apply only the consistency factor to the state-agency physicians' opinions, substantial evidence does not support the ALJ's reasons for rejecting Dr. Frank's opinions. The ALJ recognized that Dr. Frank completed two Basic Medical

15

Forms, assessing Plaintiff's ability to work. In August 2003, Dr. Frank indicated that Plaintiff could not walk more than two hours a day and for only one hour at a time. She noted that Plaintiff's ability to sit during the workday was not affected. However, Dr. Frank noted that Plaintiff could not lift more than 10 pounds occasionally or frequently. And Dr. Frank noted that Plaintiff was moderately limited in her ability to push/pull. (Tr. at 558). By September 2004, Dr. Frank indicated that Plaintiff could not walk or stand without becoming short of breath. She again indicated that Plaitniff could only lift 10 pounds occasionally and five pounds frequently. (Tr. at 531). Although ALJ McNichols acknowledged that Dr. Frank had completed basic medical forms in August 2003 and September 2004, the ALJ maintained that these assessments "essentially portray the claimant as partially bedfast due to the severity of her respiratory complaints." (Tr. at 30). Yet it is unclear how Dr. Frank's opinions were consistent with a person that was "partially bedfast." Exertionally, Dr. Frank has always assumed that Plaintiff was unlimited in her ability to sit. (Tr. at 531, 558).

      The ALJ also discounted Dr. Frank's opinion on the ground that she "appears to have based her conclusion that the claimant is disabled from all work activity primarily upon the claimant's subjective allegations and complaints, and she does not appear to have made any effort to determine whether the claimant's complaints are adequately supported by the medical evidence of record." (Tr. at 30). The ALJ, however, fails to cite to any evidence supporting these reasons. Dr. Frank, moreover, did not simply base her restrictions on Plaintiff's subjective allegations. She specifically noted in her August 2003 opinion that the

16

results of a pulmonary function study showing FEV-l at 61% and DLCO at 36% led her to her conclusions. (Tr. at 558). These were indeed the results of a pulmonary function study administered by a specialist – pulmonologist Dr. Anigbogu in June 2002. (Tr. at 279). Significantly, Dr. Anigbogu reached conclusions similar to Dr. Frank's, concerning Plaintiff's ability to work. Dr. Anigbogu noted that Ms. Spaugy could stand/walk for no more than two hours and for only one hour at a time. Dr. Anigbogu indicated that Ms. Spaugy could only lift up to 10 pounds. And Dr. Anigbogu noted Ms. Spaugy was moderately limited in her ability to push/pull. (Tr. at 264).

Accordingly, because the ALJ's second decision did not contain full and adequate reasons for rejecting Dr. Frank's opinions, the decision fails to comply with Judge Rice's remand Order.[5]

## VII. Remand is Warranted

If the ALJ failed to apply the correct legal standards or his factual conclusions are not supported by substantial evidence, the Court must decide whether to remand the case for rehearing or to reverse and order an award of benefits. Under Sentence Four of 42 U.S.C. §405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Remand is appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or

---

[5] In light of the above discussion, and the resulting need to remand this case, an in-depth analysis of Plaintiff's remaining challenge to the ALJ's decision is unwarranted.

failed to make a credibility finding. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and because the evidence of a disability is not strong while contrary evidence is weak. *See Faucher*, 17 F.3d at 176.

Plaintiff, however, is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of §405(g) due to problems set forth above. On remand the ALJ should be directed to (1) evaluate all the medical source opinions of record under the legal criteria applicable under the Commissioner's Regulations and Rulings and as mandated by case law; and (2) review Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and thus eligible for DIB and/or SSI.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Victoria Spaugy was under a "disability" within the meaning of the Social Security Act;

3. This case be remanded to the Commissioner and the Administrative Law Judge under Sentence Four of 42 U.S.C. §405(g) for further consideration consistent with this Report; and

4. The case be terminated on the docket of this Court.

July 3, 2013

                                                                     s/Sharon L. Ovington
                                                                      Sharon L. Ovington
                                                      Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).